## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| TOMMIE J. BROOKS, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   7:08-CV-02214-JEO |
| | ) |
| U.S. XPRESS ENTERPRISES, INC.; EDWARD | ) |
| THOMAS PONDER, Jr.; and NORTHSTAR | ) |
| EMS, INC., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

This matter is before the court on two pending motions.  One is a motion to dismiss filed

pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendant U.S. Xpress Enterprises, Inc.

(hereinafter "U.S. Xpress") (Doc.[1] 2).  The other is a motion filed by the plaintiff, Tommie J.

Brooks II (the "plaintiff"), to remand the action to the Circuit Court of Sumter County, Alabama,

from whence it was removed based upon a claim of fraudulent joinder.  (Doc. 6).  Upon

consideration, the court finds that the fraudulent joinder doctrine is not applicable and that the

plaintiff's motion to remand is due to be **GRANTED.**  Accordingly, this court lacks jurisdiction

to consider U.S. Xpress's motion to dismiss.

## I.       BACKGROUND

On September 3, 2008, the plaintiff initiated this action by filing a complaint in the

Circuit Court of Sumter County, Alabama.  (*See* Complaint ("Compl."), attached as Exhibit 2 to

Removal Petition, Doc. 1).  That pleading asserts claims under Alabama state law against three

identified defendants, namely, U.S. Xpress; Edward Thomas Ponder Jr. ("Ponder"); and

---

[1]References to "Doc(s).___" are to the documents as numbered by the clerk of court in the court's record of the case.

Northstar EMS, Inc. ("Northstar"), as well as various fictitious parties.  The plaintiff's claims

arise out of allegations that, on November 13, 2007, he suffered severe personal injuries in a

motor vehicle accident on Highway 17 in Sumter County that was caused by Ponder's negligent

or wanton operation of an 18-wheeler while in the employ of U.S. Xpress.  (Compl.  at ¶¶ 1, 3, 4,

5-7).  The complaint further states that, following the accident, the plaintiff was attended to by

unknown employees of Northstar, who "did negligently and/or wantonly injure him by jostling

him and/or dropping him during transport."  (*Id.* at ¶¶ 4, 9).

On November 25, 2008, defendants U.S. Xpress and Ponder (hereinafter the "removing

defendants") filed a removal petition in this court pursuant to 28 U.S.C. §§ 1441 and 1446.

("Remov. Pet.," Doc. 1, at ¶¶ 1-2).  In so doing, the removing defendants invoked this court's

diversity jurisdiction under 28 U.S.C. § 1332, which, in relevant part, authorizes the federal

district courts to hear "civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between ... citizens of different states."  28 U.S.C.

§ 1332(a)(1).  The removing defendants asserted that the plaintiff is a citizen of Alabama while

Ponder is a citizen of Georgia, and that the U.S. Xpress is a citizen of both Nevada and

Tennessee.  (Remov. Pet. at ¶ 4).  The removing defendants recognized that Northstar is a "non-

diverse" defendant, *i.e.*, an Alabama citizen.  (*Id.*; *see also* Compl. at ¶ 1 ("[Northstar] is a

corporate entity principally located within the state of Alabama.")  Nonetheless, they urged that

Northstar was fraudulently joined and that its citizenship therefore cannot destroy diversity.  (*Id.*

at  ¶¶ 3-5).  Specifically, the removing defendants argued that the plaintiff's claims against

Northstar are not sufficiently related to the claims against the removing defendants to allow them

all to be joined in a single action.  (*Id.* at ¶¶ 5-6A).  In the alternative, they contended that the

2

plaintiff failed to state a claim against Northstar on the theory that the claims against it are not pled with the particularity required by Ala. Code § 6-5-551, a provision of the Alabama Medical Liability Act ("AMLA").  (*Id.* at ¶ 6B).

Contemporaneously with the removal, U.S. Xpress also filed a motion to dismiss all claims against it, pursuant to Rule 12(b)(6), Fed. R. Civ. P.  (Doc. 2).  The plaintiff has opposed that motion to dismiss (Doc. 3), and soon thereafter the plaintiff filed his instant motion to remand.  ("Mot. to Remand," Doc. 6).  In addition, the plaintiff filed a motion, previously granted by the court, to stay all matters until the court resolves the motion to remand.  (*See* Doc. 4 & unnumbered order dated December 31, 2008).

In his motion to remand, the plaintiff argues that Northstar is not fraudulently joined because it is clear both that valid claims are at the very least colorably stated against it under Alabama law and that such claims may be joined in a single action with the claims against the removing defendants.  (Mot. to Remand at ¶¶ 3-4).  Accordingly, the plaintiff argues, Northstar is a proper defendant whose presence destroys complete diversity and requires a remand for lack of subject-matter jurisdiction.  (*Id.*)  The removing defendants have filed a response in opposition to the motion to remand ("Dfts. Opp. to Mot. to Remand," Doc. 7), and the plaintiff has filed a reply thereto.  ("Pl. Reply," Doc. 8).  Accordingly, the motion to remand is now ripe for disposition.[2]

## II.   MOTION TO REMAND

The Court of Appeals for the Eleventh Circuit has articulated the relevant standards to be applied on a motion to remand related to a removal based upon fraudulent joinder, as follows:

---

[2]The parties have consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).  (*See* Doc. 9).

When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed. *See Lincoln Prop. Co. v. Roche*, --- U.S. ----, 126 S. Ct. 606, 613 (2005) (citing 28 U.S.C. § 1441(b)). Such a remand is the necessary corollary of a federal district court's diversity jurisdiction, which requires complete diversity of citizenship.

When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case.

*Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The Eleventh Circuit has identified joinder to be fraudulent in three situations: (1) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts"; and (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citations omitted). In evaluating a motion to remand, the removing party bears the burden of demonstrating that joinder of the non-diverse defendant was fraudulent and that federal jurisdiction therefore exists. *Id.* at 1287 n.4. Further, a removing party must support its claim of fraudulent joinder by "clear and convincing evidence." *Henderson*, 454 F.3d at 1281 (citing *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)[3]).

---

[3]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

The removing defendants' argue that the plaintiff's joinder of Northstar was fraudulent under both the first and third categories identified above in *Triggs*. They argue the latter situation first, contending that Northstar was fraudulently misjoined in the state action, on the theory that the claims against Northstar are not sufficiently related to the claims against the removing defendants to permit joinder in a single action. (*See* Removal Pet. at ¶ 6A). The removing defendants maintain that the claims against them arise from one transaction or occurrence, namely the motor vehicle accident, while the claims against Northstar arise from a separate transaction or occurrence thereafter, namely in the Northstar personnel's attending to the plaintiff and transporting him to the hospital. (*Id.*) The removing defendants thus contend that the claims against them "do not depend upon or share any legal factual issues with the Plaintiff's claim against Northstar," and that the plaintiff's "insertion of a medical malpractice claim against the paramedics or EMTs who cared for him is so strained and simply too unconnected with the motor vehicle collision for the two claims to be tried together." (*Id.*) The court disagrees.

When it first acknowledged the "third" *Triggs* category, often referred to as "fraudulent misjoinder," the Eleventh Circuit stated that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The court cautioned that it was not "hold[ing] that mere misjoinder is fraudulent joinder," but it explained that where a plaintiff has joined claims against one or more non-diverse defendants that have "no real connection with the controversy" involving the diverse defendants, the misjoinder of such parties in one action may be "so egregious as to constitute fraudulent joinder." *Tapscott*, 77 F.3d at

5

1360.

The plaintiff argues that his joinder of Northstar was authorized by Rule 20 of the

Alabama Rules of Civil Procedure, which provides in relevant part:

> (a) Permissive Joinder. ... All persons may be joined in one action as defendant if
> there is asserted against them jointly, severally, or in the alternative, any right to
> relief in respect of or arising out of the same transaction, occurrence, or series of
> transaction or occurrences and if any question of law or fact common to all
> defendants will arise in the action."

Rule 20(a), Ala. R. Civ. P.  Indeed, the Alabama Supreme Court has expressly held that, under

this rule, a plaintiff who brings claims against an alleged tortfeasor for causing injuries in an

accident may join in the same action claims against another defendant alleging medical

malpractice in his treatment of the plaintiff's injuries.  *See Ex parte Rudolph*, 515 So. 2d 704

(Ala. 1987); *Ex parte Jenkins*, 510 So. 2d 232 (Ala. 1987); *see also Malcolm v. King*, 686 So. 2d

231, 236 (Ala. 1996).  In such circumstances, Alabama law provides that an initial tortfeasor is

liable for the full extent of foreseeable injuries caused by his negligence, which is generally

deemed to include aggravation of the plaintiff's condition stemming from subsequent negligent

medical treatment of the initial injuries.  *See Rudolph*, 515 So. 2d at 707-08; *see also Looney v.

Davis*, 721 So. 2d 152, 159-60 (Ala. 1998).  As such, Alabama courts treat such claims against

alleged initial and successive tortfeasors as arising out of the same series of occurrences that

begin with the original accident and continue with the resulting hospitalization and treatment for

the original injury and implicating common questions of law and fact relating to the proximate

cause of the plaintiff's injuries and to damages.  *See Rudolph*, 515 So. 2d at 707 (citing *Jenkins*,

510 So. 2d at 234).  Accordingly, the court concludes that Northstar was not misjoined in the

state action, "egregiously" or otherwise, precluding a finding of fraudulent joinder under the third

*Triggs* category.[4]

Alternatively, the removing defendants claim that Northstar was fraudulently joined under the first *Triggs* category, on the theory that the plaintiff cannot establish a cause of action against Northstar.  The removing defendants assert in their petition that the plaintiff has failed to state a cause of action against Northstar because the allegations of the complaint are not pled with requisite particularity.  Specifically, the removing defendants contend that the claims against Northstar amount to medical malpractice claims that are subject to the provisions of the AMLA, including Ala. Code § 6-5-551, which provides in relevant part:

> In any action for injury, damages, or wrongful death, whether in contract or in tort,
> against a health care provider for breach of the standard of care, whether resulting
> from acts or omissions in providing health care, or the hiring, training, supervision, retention, or
> termination of care givers, the Alabama Medical Liability Act shall govern the parameters of
> discovery and all aspects of the action. *The plaintiff shall include in the complaint filed in the
> action a detailed specification and factual description of each act and omission alleged by*

---

[4]The court notes that the plaintiff has argued that this fraudulent misjoinder issue is to be decided by reference to Alabama state law, specifically to Rule 20, Ala. R. Civ. P., and state decisional law interpreting it.  The defendants have not contested that state, rather than federal, rules and court decisions supply the relevant joinder standards in this context.  In *Tapscott*, however, the Eleventh Circuit held that non-diverse defendants in an Alabama state court action had been fraudulently misjoined so as to authorize an exercise of diversity jurisdiction upon removal, and in so doing, the court referred to the permissive joinder standards of Rule 20(a), Fed. R. Civ. P., not the state rule.  *See* 77 F.3d at 1360.  Similarly, in *Triggs*, relying upon *Tapscott*, the court of appeals again looked to the federal joinder rule, although the *Triggs* court found no fraudulent misjoinder.  154 F.3d at 1288.  However, there is no indication that that the question of state-versus-federal joinder rules was argued to either panel; it certainly is not confronted in either opinion.  Given that the issue was not expressly addressed and that the relevant language of the respective state and federal rules is not materially distinguishable, it is fair to characterize the references in *Tapscott* and *Triggs* to the federal rule as dicta.  *See generally Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004) ("Dictum is ... a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case.")  The better reasoned view is to look to the state rule; it simply makes no sense to say that a plaintiff's joinder of a non-diverse party in a state court complaint, which is not governed by federal joinder rules and would be permissible under state rules, becomes a fraudulent exercise to avoid federal jurisdiction only after the defendant removes the case to federal court based upon an application of a potentially more restrictive federal rule.  *See Grady Bros. Investments, LLC v. General Motors Acceptance Corp.*, 2007 WL 4577701, *6 n.14 (S.D. Ala. 2007); *Palermo v. Letourneau Technologies, Inc.*, 542 F. Supp. 499 (S.D. Miss. 2008); *Federal Insurance Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 381 (S.D.N.Y. 2006); *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999); *cf. Henderson*, 454 F.3d at 1283-84 (holding that the defendants had failed to demonstrate that there was "no possibility" that the plaintiff could establish a cause of action against the resident defendant based upon reference to state pleading rules and state decisions interpreting them).  Ultimately, however, this court would reach the same result here even if it looked to Rule 20(a), Fed. R. Civ. P., as it likewise authorizes an injured plaintiff to join both the original tortfeasor and a second tortfeasor whose subsequent negligence aggravated plaintiff's original injuries.  *See* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1653 & n.14 (3d ed. 2008 update) (citing *Poster v. Central Gulf S.S. Corp.*, 25 F.R.D. 18 (E.D. Pa. 1960); *McNeil v. American Export Lines, Inc.*, 166 F. Supp. 427 (E.D. Pa. 1958); *Lucas v. City of Juneau*, 127 F. Supp. 730 (D. Alaska 1955)); *Diehl v. H.J. Heinz Co.*, 901 F.2d 73, 73-74 (7th Cir. 1990).

*plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts.* ... Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551 (emphasis added).  The removing defendants urge that the plaintiff's allegations against Northstar "do[ ] not even come close to satisfying the pleading requirement of § 6-5-551."  (Remov. Pet. at ¶ 6B).  The removing defendants thus contend that the claims against Northstar would be subject to dismissal and demonstrate that Northstar has been fraudulently joined.  Again, the court disagrees.

    In order to justify their claim of fraudulent joinder based on this category, the burden is on the removing defendants "is a heavy one."  *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).  It is not merely to show that the plaintiff's complaint may be technically insufficient under Alabama pleading rules, which is a determination to be made by a state, rather than a federal, court.  *See Henderson*, 454 F.3d at 1284.  Rather, the removing defendants must show by clear and convincing evidence that there is "*no possibility*" that the plaintiff has sufficiently pled a cause of action against Northstar.  *Id.,* 454 F.3d at 1283 (emphasis original). The Eleventh Circuit has cautioned that so long as a plaintiff's claim against a non-diverse defendant may be characterized as even "colorable," *Pacheco de Perez*, 139 F.3d at 1380; *Henderson*, 454 F.3d at 1284, or "arguable," *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997), fraudulent joinder does not apply and the action is due to be remanded.  Further, "'doubtful issues of law due to absence of definite pronouncements by the state supreme court are to be tried in the court having original jurisdiction of the case and are not to be determined in a removal proceeding.'"  *Crowe*, 113 F.3d at 1540 (quoting *Parks*, 308 F.2d at 477).

While the removing defendants argue that the plaintiff's allegations against Northstar are not sufficiently particular under § 6-5-551, the plaintiff contests whether the claims for rough handling during transport amount to a cause of action "against a health care provider for breach of the standard of care" under the statute so as to be subject to a heightened pleading requirement at all.  The AMLA governs most theories of legal liability against health care providers in Alabama.  Section 6-5-542, Ala. Code, defines a "health care provider" for purposes of the AMLA as "[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481." Ala. Code § 6-5-542(1).  Further, the term "other health care provider" is defined as "[a]ny professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." Ala.Code § 6-5-481 (1975).  As the plaintiff has argued, it does not appear that any Alabama appellate court case has addressed whether an ambulance service qualifies as a "health care provider" so as to render claims against it subject to the AMLA.  The removing defendants cite a string of Alabama Supreme Court cases that have generally interpreted the term "health care provider" broadly so as to allow the AMLA to govern claims against numerous types of institutions and individuals connected with delivery of medical or health care services, including: *Tuscaloosa Orthopedic Appliance Co. v. Wyatt*, 460 So. 2d 156, 161 (Ala. 1984) (orthotist); *Rosemont, Inc. v. Marshall*, 481 So. 2d 1126, 1129 (Ala. 1985) (entity operating a skilled and intermediate care nursing facility); *Wilson v. American Red Cross*, 600 So. 2d 216, 218-19 (Ala. 1992) (American Red Cross, which had contracted to supply blood at hospital); *Ex parte Main*, 658 So. 2d 384, 387 (Ala. 1995) (registered nurse hired by workers' compensation insurer to oversee employees rehabilitation after workplace injury who was under

9

contract with a hospital and a physician); *Crowne Investments, Inc. v. Reid*, 740 So. 2d 400, 403

(Ala. 1999) (professional corporation employed to provide services at skilled nursing facility);

*Anderson v. Alabama Reference Laboratories*, 778 So. 2d 806 (Ala. 2000) (reference laboratory

engaged by physician to perform testing of patient fluid sample); *Cackowski v. Wal-Mart Stores,*

*Inc.*, 767 So. 2d 319, 324-25 (Ala. 2000) (pharmacist); and *Ex parte Rite Aid of Ala., Inc.*, 768

So. 2d 960, 962 (Ala. 2000) (corporate operator of a pharmacy); *but see Sellers v. Picou*, 474 So.

2d 667, 669 (Ala. 1985) (podiatrist not covered); *Baker v. McCormeck*, 511 So. 2d 170, 171

(Ala. 1987) (chiropractor not covered); and *Ex parte Partners in Care, Inc.*, 986 So. 2d 1145

(Ala. 2007) (drug manufacturer not covered).

It seems unlikely to this court given the body of precedent that the Alabama Supreme

Court would hold today that an ambulance service is not an "other health care provider" for

purposes of the AMLA, at least in connection with its personnel's handling and transportation of

a patient to a hospital.  Nonetheless, the fact remains that the issue has not been addressed by the

Alabama courts.  Further, Alabama Supreme Court has suggested in dicta that "situations other

than those involving medical care," would include the example of when "an ambulance company

did not respond to a call for assistance."  *Ex parte HealthSouth Corp.*, 851 So. 2d 33, 38-39 (Ala.

2002).  Accordingly, there is at least a toehold to argue that a claim against an ambulance service

is not governed by the AMLA and its heightened pleading requirement.  Such an ambiguity in

state law regarding the status of an ambulance service under the AMLA counsels the propriety of

remand.  *See Billingsley v. McWhorter Farms, LLC*, 2007 WL 1219724, *2-3  (M.D. Ala. 2007)

(addressing this precise issue).

However, this court need not rely upon such ambiguity in resolving the question of

fraudulent joinder in this case.  Even assuming for the sake of argument that the plaintiff's claims against Northstar are subject to § 6-5-551, the court concludes that the removing defendants have failed to demonstrate that there is "no possibility" that the plaintiff's allegations are sufficient to state a claim under the Alabama statute.  "[T]he Alabama Supreme Court the Alabama Supreme Court has construed [§ 6-5-551] as requiring the plaintiff to give "fair notice of the allegedly negligent act"; as long as fair notice is provided, "courts should strive to find that the complaint includes the necessary 'detailed specification and factual description of each act and omission alleged.' "  *Betts v. Eli Lilly and Co.*, 435 F. Supp. 2d 1180, 1188 (S.D. Ala. 2006) (quoting *Mikkelsen v. Salama*, 619 So.2d 1382, 1384 (Ala. 1993); *see also Baptist Medical Center Montclair v. Wilson*, 618 So. 2d 1335, 1337-38 (Ala. 1993); *Ex parte Coosa Valley Health Care, Inc.*, 789 So. 2d 208, 216 (Ala. 2000).

The complaint contains allegations that Northstar is liable because, on November 13, 2007, its personnel attended to the plaintiff following an accident that occurred with an 18-wheeler on Highway 17 in Sumter County, Alabama.  (Compl. at ¶ 4).  The plaintiff further alleges that Northstar, through its employees, "did negligently and/or wantonly injure [the plaintiff] by jostling and/or dropping him during transport."  (*Id.* at ¶ 9).  The removing defendants argue that these allegations do "not even come close to satisfying the pleading requirement of § 6-5-551."  (Remov. Pet. at ¶ 6B).  However, the removing defendants do not offer what additional information they would have the plaintiff plead at this point in order to put Northstar on fair notice of the claim against it, nor do they cite any potentially analogous caselaw that might suggest that the plaintiff's complaint is deficient.  However this court's task is not to gauge whether the complaint is, in fact, sufficient under Alabama law.  Rather, this court's

inquiry on a motion to remand is merely to determine whether there is any possibility that the plaintiff has asserted a colorable claim against Northstar.  And on that score, the court believes that there exists a sufficiently substantial question as to whether the plaintiff has successfully pled a medical malpractice claim against Northstar under Alabama law.  Accordingly, the court holds that the removing defendants have failed to establish the applicability of the fraudulent joinder doctrine based upon the alleged lack of detail in the complaint.  *See Henderson,* 454 F.3d at 1284; *Betts*, 435 F. Supp. 2d at 1188; *Billingsley,* 2007 WL 1219724, *2-3.

In their opposition to the motion to remand, the removing defendants have articulated a final, additional theory why the complaint supposedly fails to state a potentially viable claim against Northstar: Recognizing that a tortfeasor is liable under Alabama law for all of the foreseeable injuries caused by his negligence, which generally includes aggravation resulting from negligent medical care, the removing defendants now argue that "if Plaintiff was injured by Defendant US Xpress and its driver in a motor vehicle accident, and Plaintiff was subsequently injured by EMS who responded to the motor vehicle accident, then only Defendants US Xpress and its driver would be responsible for causation of Plaintiff's injuries ... ."  (Dfts. Opp. to Mot. to Remand at 5-6).  This interpretation misreads Alabama tort law.  None of the cases cited by the removing defendants supports this interpretation: that the principle that an initial tortfeasor's liability typically encompasses aggravation resulting from a successive tortfeasor's negligent medical care *relieves the successive tortfeasor from all potential malpractice liability*.  Suffice it to say that that is not the law.  *See Rudolph*, 515 So. 2d at 708 ("The petitioners reason that if the claims are severed, the [health care defendants] could make a motion for summary judgment ... and obtain dismissal on the theory that the claim for malpractice injury had already been satisfied

in the suit against [the initial tortfeasor] defendant.  Let us make it clear that that is not the case."); *see also, e.g., Alabama Farm Bureau Ins. Co. v. Hunt*, 519 So. 2d 480 (Ala. 1987) (affirming trial court's reformation of a release entered into with the initial tortfeasor so as to allow a subsequent suit against successive tortfeasor health care providers).  Indeed, under the removing defendants' theory, the health care provider defendants in both *Rudolph* and *Jenkins* were entitled to an outright dismissal of the medical malpractice claims against them under Rule 12(b)(6), Ala. R. Civ. P., and were thus wasting their time by seeking a mere severance.  Of course, the reason that the health care provider defendants did not move for dismissal is obvious: While a plaintiff may *recover* only one time for his injuries, including for any aggravation caused by negligent medical care, that does not imply that a successive tortfeasor is insulated from *liability* for his own wrongdoing.  Rather, under traditional tort law rules, a successive tortfeasor may be liable along with the initial tortfeasor for the harm constituting the aggravation attributable to the successive tortfeasor's wrongdoing, provided the injuries are distinct, or for the full extent of all harm where it is not reasonably capable of division.  *See* W. Page Keeton et al., *Prosser and Keeton on Torts* § 52, at 352 (5th ed. 1984); *Rio Mar Associates, LP, SE v. UHS of Puerto Rico, Inc.*, 522 F.3d 159, 166 (1st Cir. 2009); *see also General Motors Corp. v. Edwards*, 482 So. 2d 1176, 1190 (Ala. 1985) ("Alabama law holds that, where two or more tortfeasors act to produce an indivisible injury, apportionment is not allowed." (citing *Ex parte City of Huntsville*, 456 So. 2d 72 (Ala. 1984))), overruled on other grounds, *Schwartz v. Volvo N. Amer. Corp.*, 554 So. 2d 927 (Ala. 1989); *M. C. West, Inc. v. Battaglia*, 386 So. 2d 443, 447 (Ala. Civ. App. 1980) (holding that the rule preventing apportionment of damages applies only when there is no evidence as to what part of plaintiff's damage is attributable to various causes; however,

13

when plaintiff presents evidence of attribution to various causes, he may recover under the reasonable certainty standard).

Even assuming, however, that Northstar could conceivably be absolved of liability based upon a principle of exclusive liability in an initial tortfeasor, the removing defendants are *still* wrong that it would demonstrate that Northstar was fraudulently joined.  If a jury ultimately were to find that that the removing defendants are not liable for the initial injuries because, for example, the jury determined that Ponder was not negligent in operating his vehicle or that the plaintiff was himself contributorily negligent in causing the accident, Northstar could still be liable under Alabama law if its negligence proximately caused an aggravation of the plaintiff's condition.  *See, e.g., Rivard v. University of Ala. Health Services Foundation, P.C.*, 835 So. 2d 987 (Ala. 2002) (recognizing potential malpractice for health care provider defendants based upon their treatment of a plaintiff injured in a motor vehicle accident); *Malcolm, supra* (same); *Jefferson Clinic, P.C. v. Roberson*, 626 So. 2d 1243 (Ala. 1993) (same); *see also generally* Cheryl M. Bailey, Annotation, *Liability of Operator of Ambulance Service for Personal Injuries to Person Being Transported*, 68 A.L.R. 4th (1989).

The court rejects the removing defendants' arguments claiming that Northstar was fraudulently joined.  Therefore, the court concludes that the plaintiff's motion to remand is due to be granted.

## III.   MOTION TO DISMISS

Defendant U.S. Xpress has filed a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P.  (Doc. 2).  However, where an action is due to be remanded to state court, there is no basis for federal subject-matter jurisdiction so as to allow a district court to consider a pending

motion to dismiss based on the purported failure of the complaint to state a claim. *See Henderson*, 454 F.3d at 1284; *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 854 (3d Cir. 1992). Accordingly, the court will not address the motion to dismiss.

**IV.     CONCLUSION**

Based on the foregoing, the court holds that the fraudulent joinder doctrine is not applicable to the plaintiff's claims against Northstar and that, as a result, the plaintiff's motion to remand this action to the Circuit Court of Sumter County, Alabama, (Doc. 6) is due to be **GRANTED**.  The court further concludes that it lacks subject-matter jurisdiction to consider U.S. Xpress's motion to dismiss (Doc. 2).  A separate order will be entered contemporaneously herewith.

**DONE,** this the 27th day of February, 2009.

John E. Ott

**JOHN E. OTT**
United States Magistrate Judge

15